**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SABATO CONTE, MICHAEL MURPHY, YAMIRA WONG, ANTHONY LARDO, and MATTHEW IAROCCI, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Defendants. | Civil Case No.: 1:21-cv-02516<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sabato Conte, Michael Murphy, Yamira Wong, Anthony Lardo, and Matthew Iarocci (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, hereby allege the following against Defendants Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") (collectively, "Defendants"):

<u>**NATURE OF THE CLAIMS**</u>

1.      Plaintiffs, on behalf of themselves and all current and former similarly situated Bridge and Tunnel Maintainers ("Maintainers") and Custodians ("Custodians") employed by Defendants, bring this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") to recover unpaid overtime compensation and liquidated damages for delayed payments of overtime and other wages.

2.      Defendants employ a systemic time-cutting policy that automatically rounds all clock-in times for all Maintainers and Custodians up to their scheduled tour start times, even

though Maintainers and Custodians perform a significant amount of pre-shift work before the start of their scheduled tours.

3.     Defendants also engage in a practice of intentionally miscalculating Maintainers' and Custodians' overtime rates by refusing to include certain compensation, including differentials and bonuses, in the Maintainers' and Custodians' regular rate of pay when calculating overtime.

4.     Additionally, Defendants intentionally refuse to treat each week in a two-week pay period as a distinct workweek, and fail to pay FLSA mandated overtime when Maintainers, scheduled for 12-hour tours, work in excess of 40 hours in each discrete workweek.  Instead, Defendants aggregate the time worked in both weeks of each pay period, and pay overtime only when this aggregated time exceed 80 hours—even when these maintainers work over 40 hours in a single workweek.

5.     Finally, until approximately July 1, 2020, Defendants engaged in an unlawful policy and practice of delaying the payment of overtime compensation and other wages owed to the Maintainers and Custodians beyond their regularly scheduled paydays, without any reasonable justification for doing so.

6.     Defendants' organization-wide policies and practices affect all Maintainers and Custodians and, except as indicated above, the resulting violations of the FLSA are continuous and ongoing.

7.     Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other Maintainers and Custodians who performed work for Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

9.      This Court also has subject matter jurisdiction over Plaintiffs' claims under the FLSA, pursuant to 29 U.S.C. § 216(b).

10.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper because a substantial part of the events or omissions giving rise to this action occurred in this District.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**A.    Plaintiffs**

12.     Plaintiff Sabato Conte is a resident of the State of New York and has been employed by Defendants as a Maintainer from November 1990 through the present.  At all relevant times, Mr. Conte was an "employee" of Defendants within the meaning of the FLSA.

13.     Plaintiff Michael Murphy is a resident of the State of New York and has been employed by Defendants as a Maintainer from 2003 through the present.  At all relevant times, Mr. Murphy was an "employee" of Defendants within the meaning of the FLSA.

14.     Plaintiff Yamira Wong is a resident of the State of New York and has been employed by Defendants as a Custodian from January 2008 through the present.  At all relevant times, Ms. Wong was an "employee" of Defendants within the meaning of the FLSA.

15.     Plaintiff Anthony Lardo is a resident of the State of New York and has been employed by Defendants as a Maintainer from October 1990 through the present.  At all relevant times, Mr. Lardo was an "employee" of Defendants within the meaning of the FLSA.

16.     Plaintiff Matthew Iarocci is a resident of the State of New York and was employed by Defendants as a Maintainer from September 2016 through the present.  At all relevant times, Mr. Iarocci was an "employee" of Defendants within the meaning of the FLSA.

**B.**     **Defendants**

17.     Defendant MTA is a public benefit corporation responsible for public transportation in New York and Connecticut, with its principal place of business located at 2 Broadway, New York, New York 10004.

18.     At all relevant times, Defendant MTA was an "employer" of Plaintiffs within the meaning of the FLSA.

19.     Upon information and belief, MTA negotiates the wages of the Maintainers and Custodians with District Council 37 and its affiliated Local Union 1931 of the American Federation of State, County and Municipal Employees, AFL-CIO, and controls the payroll, timekeeping, and compensation practices at issue in this case.

20.     Payroll and compensation benefits for the Maintainers and Custodians are processed by the MTA's Business Services Center.

21.     MTA issues paychecks and payroll information to all Maintainers and Custodians following each pay period.

22.     Upon information and belief, MTA exercises control over how the Maintainers' and Custodians' overtime rates are calculated and paid.

23.     Upon information and belief, MTA maintains the Maintainers' and Custodians' employment records and all other documents relating to Human Resources, benefits, and payroll in its Business Services Center.

24.     Maintainers and Custodians are issued employee IDs and vehicle tags identifying them as MTA employees.

25.     Maintainers and Custodians are provided access to an online electronic portal ("MTA Portal") by visiting www.mymta.com.  Once logged into the MTA Portal, Maintainers and Custodians have access to all of their payroll information, including electronic paystubs, gross wages earned, deductions, and information relating to their benefits.

26.     Defendant TBTA is a transportation and toll collection agency which operates seven intrastate toll bridges and two tunnels in New York City.  Defendant TBTA is an affiliate agency of MTA, with its principal place of business at the Robert Moses Building, Randall's Island, New York, NY 10035.

27.     At all relevant times, Defendant TBTA was an "employer" of Plaintiffs within the meaning of the FLSA.

28.     Upon information and belief, TBTA handles employee relations issues of the Maintainers and Custodians on behalf of the MTA.

29.     Upon information and belief, TBTA handles Maintainers' and Custodians' complaints relating to payroll, timekeeping, and compensation practices at issue in this case.

30.     Upon information and belief, TBTA exercises control over how the Maintainers' and Custodians' overtime rates are calculated and paid.

31.     At all relevant times, Defendants MTA and TBTA were, jointly and individually, "employers" of Plaintiffs, within the meaning of the FLSA.

32.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

## FACTS

A.     **Background**

33.     Plaintiffs all work for Defendants as Maintainers and Custodians.

34.     Maintainers are responsible for the maintenance, repair, and operations of MTA's equipment, facilities, buildings, bridges, and tunnels.  Some of their duties include repairing movable bridges, climbing bridges and suspension cables to perform work on same, repairing mechanical equipment, such as fans, pumps, and heating boilers, maintaining automotive and mobile equipment used by MTA, clearing snow and removing debris from MTA's facilities, painting and installing signs at the various facilities, and assisting disabled vehicles at the various bridges.

35.     Custodians are responsible for cleaning MTA's facilities, buildings, shops, offices, and grounds. Some of their duties include sweeping, mopping, toilet cleaning, replenishing bathroom supplies, washing walls, scrubbing floors, waxing and polishing floors, cleaning stairs, vacuuming carpets, dusting and cleaning blinds, polishing furniture, cleaning mirrors, glass fixtures, bookcases, and light fixtures, replacing light bulbs, sweeping sidewalks, emptying waste baskets, and disposing of garbage.

36.     Defendants have established a bi-weekly pay period, with each workweek starting on Thursday and ending the following Wednesday, and the regularly scheduled pay day being every other Friday.

37.     Maintainers and Custodians are regularly scheduled to work either five 8-hour tours every week, for a total of 40 hours each week, or three 12-hour tours in one week of a pay period,

for a total of 36 hours that week, followed by four 12-hour tours in the second week of that pay

period, for a total of 48 hours that week.

B.     **Maintainers and Custodians Regularly Perform Compensable Pre-Shift Work Off the Clock**

38.     All Maintainers and Custodians regularly perform "pre-shift" work before their

scheduled tours start.

39.     Such pre-shift work consists of, *inter alia*: (1) briefing and conferring with one

another about assignments, incidents, events, and other pertinent information relevant to the

upcoming tour; (2) briefing and conferring with Officers, Sergeants, Lieutenants, and other MTA

and TBTA personnel about assignments, incidents, events, and other pertinent information

relevant to the upcoming tours; (3) rebooting and starting up the computers; (4) reviewing emails,

alerts, and other pertinent correspondence and communications; (5) reviewing work orders; (6)

collecting and signing out the necessary equipment and supplies; (7) testing the equipment to

ensure functionality; and (8) compiling various forms – such as the wrecker form and other

paperwork, for use during the tour.

40.     Plaintiffs and other Maintainers and Custodians routinely start working 25 to 45

minutes before their scheduled tour start-time in order to complete all of their pre-shift work.

41.     Defendants require all Maintainers and Custodians to perform this pre-shift work

without compensation by: (1) implementing and requiring strict, uniform, and unlawful clock-in

restrictions; and (2) implementing and requiring unlawful time rounding policies.

i.     **Clock-In Restrictions**

42.     While all Maintainers and Custodians typically perform extensive pre-shift work,

several months ago, Defendants implemented a uniform seven-minute policy, which forbids

Maintainers and Custodians from clocking in more than seven minutes before the start of their

tours.

43.     This recent clock-in restriction results in Maintainers and Custodians performing pre-shift work before they are allowed to clock in.

44.     Due to Defendants' unlawful policy of requiring Maintainers and Custodians to perform work before they are permitted to clock in, Maintainers' and Custodians' total hours worked are significantly deflated, resulting in an unlawful failure to pay overtime wages.

45.     Defendants have acted willfully and deliberately in maintaining an intentional practice of requiring Maintainers and Custodians to perform compensable work off the clock.

**ii.     Unlawful Shaving of Recorded Work Time**

46.     Defendants have an organization-wide timekeeping program called "Kronos."

47.     Kronos logs each Maintainer's and Custodian's actual clock-in times.

48.     Kronos is also programmed with each Maintainer's and Custodian's scheduled tour times.

49.     When Kronos exports clock-in times to Defendants' payroll system, it automatically rounds the Maintainers' and Custodians' clock-in times to their scheduled tour start times.

50.     Therefore, Defendants' organization-wide timekeeping and payroll policies and practices shave recorded work time by giving credit to Maintainers and Custodians only for time worked since the scheduled start times of their tours, even though they routinely clock in and perform work before their tours begin.

51.     For example, if a Maintainer or Custodian clocks in and begins working at 7:20 a.m. for a tour that starts at 7:50 a.m., Kronos records the 7:20 a.m. clock-in time, but automatically rounds it forward to 7:50 a.m. for payroll purposes, thereby cutting 30 minutes of time worked.

52.     However, if a Maintainer or Custodian clocks in after his or her scheduled tour start time, Kronos rounds the clock-in time forward in 30-minute increments.

53.     For example, if a Maintainer or Custodian clocks in at 7:51 a.m. for a 7:50 a.m. tour, Kronos records the 7:51 a.m. clock-in time, but automatically rounds it forward by 30 minutes to 8:20 a.m. for payroll purposes, thereby cutting 29 minutes of time worked.

54.     Also, the Maintainer or Custodian would be subject to formal discipline for arriving to work late.

55.     Therefore, all work time that is performed before the scheduled tour start-time, including all pre-shift work, is always uncompensated, off-the-clock work.

56.     Mr. Conte's time for the workweek spanning from July 25, 2019 to July 31, 2019 illustrates Defendants' practice of shaving recorded work time.  According to the time records, Mr. Conte worked 44.40 hours, but was paid for only 43 hours during this work period. Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 1.4 hours during this work period.

57.     Similarly, Mr. Iarocci's time records for the workweek spanning from August 8, 2019 to August 14, 2019 show that he worked 52.45 hours, but was paid for only 51 hours during this workweek.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 1.45 hours.

58.     Defendants' shaving of Plaintiffs' work hours is representative of Defendants' practices with respect to the other Maintainers and Custodians.

59.     This shaved time is compensable working time as Maintainers and Custodians routinely perform extensive pre-shift work before their tours start.

60.    Defendants engage in the same timekeeping and payroll practices with respect to all Maintainers and Custodians and, thus, all Maintainers and Custodians are subject to this unlawful time-shaving policy.

61.    Defendants have acted willfully and deliberately in maintaining intentional practices of improperly shaving the Maintainers' and Custodians' work time and forcing them to perform off-the-clock work.

**C.    Failure To Calculate Overtime Based On The Differential Rate Of Pay**

62.    Pursuant to a collective bargaining agreement among the parties, in addition to being paid at their respective regular hourly rates, Maintainers and Custodians also receive other forms of compensation.

63.    First, Maintainers and Custodians receive shift differentials for working nighttime tours, unscheduled tours, or for performing certain undesirable work—such as climbing, working with lead, performing sandpipe inspections, avian waste cleaning, gun range cleaning, and various other undesirable work (the "Shift Differentials").

64.    Maintainers and Custodians receive Shift Differentials for nighttime tours, unscheduled tours, or undesirable work irrespective of their previous hours worked within the same workweek.

65.    For example, if a Maintainer or Custodian works a nighttime tour for his first shift of a given workweek, he or she receives a Shift Differential for the hours worked during that tour.

66.    Conversely, he or she will not receive FLSA overtime compensation for working more than 40 hours in a workweek.

67.    Second, Maintainers and Custodians receive annual "attendance bonuses" if they maintain a perfect attendance record for the year (the "Attendance Bonuses").

10

68.    Third, Maintainers and Custodians receive certain lump sum payments at various times throughout the year, irrespective of their hours worked, such as "longevity pay" which is based solely on the number of years for which a given Maintainer or Custodian has been employed by Defendants, and various other lump sum payments, which are paid without regard to the number of hours worked (the "Lump Sum Payments").

69.    The Maintainers and Custodians do not allege that they are not paid these Shift Differentials, Attendance Bonuses, and/or Lump Sum Payments; rather, they allege only that Defendants fail to include this additional compensation in the their regular rates of pay for purposes of calculating their FLSA overtime rates.

70.    This practice results in an unlawful reduction in the Maintainers' and Custodians' overtime pay.

71.    The Shift Differentials and Lump Sum Payments meet the requirements to be considered non-overtime premiums, which must be included in the regular rate of pay, upon which the overtime rate is computed, pursuant to 29 C.F.R. § 778.207.

72.    Indeed, 29 C.F.R. § 778.207(b) explicitly states that "nightshift differentials" and "lump sum premiums which are paid without regard to the number of hours worked" are to be considered non-overtime premiums and must be included in the regular rate upon which the overtime rate is based.  *See also* 29 C.F.R. § 778.201(b)-(c) (stating that only the premiums delineated in FLSA §§ 207(e)(5)-(7) may be credited toward overtime compensation due, and that "[n]o other types of remuneration may be so credited"); 29 C.F.R. § 778.207(a) (same).

73.    The Lump Sum Payments are paid in fixed amounts irrespective of the number of hours the Maintainers and Custodians work during a given work period.

74.    None of the Lump Sum Payments fall into the categories listed in FLSA §§ 207(e)(5)-(7).

75.    The Attendance Bonuses are properly considered "[p]romised bonuses" which must be included in the regular rate of pay under 29 C.F.R. § 778.211(c).  *See also* 29 C.F.R. § 778.208 (stating that bonuses not specifically excluded by FLSA § 207(e) "must be totaled in with other earnings to determine the regular rate on which overtime must be based").

76.    The Attendance Bonuses are not excluded under FLSA § 207(e).

77.    In fact, 29 C.F.R. § 778.211(c) expressly states that "attendance bonuses" and bonuses promised to employees as "the result of collective bargaining" are not excluded under FLSA § 207(e) and must be included in the regular rate of pay for purposes of calculating the overtime rate.

78.    As detailed above, Plaintiffs, like all other Maintainers and Custodians, consistently work in excess of 40 hours during each workweek, thus entitling them to overtime compensation under the FLSA.

79.    However, Defendants improperly exclude the Shift Differentials, Attendance Bonuses, and Lump Sum Payments from the Maintainers' and Custodians' regular rates of pay when computing their overtime rates.

80.    As a result, the Maintainers' and Custodians' overtime compensation is unlawfully reduced.

81.    Defendants have acted willfully and deliberately in maintaining this intentional practice of improperly excluding the Shift Differentials, Attendance Bonuses, and Lump Sum Payments from the Maintainers' and Custodians' regular rates of pay when computing their overtime rates.

**D.**     **Failure to Calculate Overtime for Each Discrete Workweek**

82.     In addition to the foregoing, Defendants deny overtime to Maintainers who work 12-hour tours, by engaging in a common policy of aggregating their hours worked during each discrete workweek of a two-week work period, and paying FLSA overtime only when such time worked exceeds 80 hours.

83.     For example, Mr. Murphy is a Maintainer who is regularly scheduled to work three 12-hour tours in one week of a pay period, for a total of 36 hours that week, followed by four 12-hour tours in the second week of the same pay period, for a total of 48 hours that week. Together, Mr. Murphy is regularly scheduled to work 84 hours in a two-week pay period.

84.     Defendants unlawfully aggregate both of these discrete workweeks, thereby paying Mr. Murphy only four hours of FLSA overtime, rather than the eight hours of FLSA overtime to which he is entitled.

85.     Defendants engage in the same unlawful payroll practices with respect to all Maintainers who work 12-hour tours; thereby, uniformly denying all of them full FLSA overtime compensation when they work more than 40 hours in a workweek despite receiving some FLSA overtime compensation when, in the aggregate, they work more than 80 hours in a two-week pay period.

**E.**     **Failure to Pay Wages On Time**

86.     In addition to the foregoing violations, up until approximately July 1, 2020, Defendants engaged in a policy and practice of delaying payment of overtime and wages to the Maintainers and Custodians beyond their regularly scheduled paydays.

87.     Indeed, instead of receiving all wages for work performed within a given pay period, Maintainers and Custodians only receive compensation for their non-overtime wages on

their regularly scheduled bi-weekly payday.

88.    All overtime wages were withheld and not paid until up to two pay periods—*i.e.*, four to six weeks—after the work was performed.

89.    Under the FLSA, employers are required to pay employees on the next regularly scheduled payday following the work performed.

90.    By way of example only, attached hereto as Exhibit A are copies of two wage statements for Mr. Conte.  For the statement encompassing the work period from June 4, 2020 through June 17, 2020, a direct deposit was made into Mr. Conte's bank account on June 17, 2020. This deposit, issued in the amount of $2,039.02, includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from May 7, 2020 to May 20, 2020 (noted on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

91.    This practice is then repeated in the following wage statement, dated July 1, 2020. This statement encompasses the work period of June 18, 2020 through July 1, 2020 and shows a direct deposit of $2,235.63 into Mr. Conte's bank account on July 1, 2020.  Again, this deposit includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from May 21, 2020 to June 17, 2020 (noted on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").  *See* Exhibit A.

92.    Similarly, but again by way of example only, attached hereto as Exhibit B is a copy of Mr. Lardo's wage statement dated April 22, 2020.  This statement encompasses the work period of April 9, 2020 to April 22, 2020 and shows a paycheck in the amount of $2,509.85.  Again, this paycheck includes payment both for Mr. Lardo's regular hours worked during the same work

period, as well as for overtime earned – four to six weeks earlier – during the work period from March 12, 2020 to March 25, 2020 (noted on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

93.    As another example, attached hereto as Exhibit C is a copy of Mr. Iarocci's wage statement dated June 3, 2020.  This statement encompasses the work period of May 21, 2020 to June 3, 2020 and shows a direct deposit of $1,974.96 into Mr. Iarocci's bank account on June 3, 2020.  Again, this deposit includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from April 23, 2020 to May 6, 2020 (noted on the statement under the heading "HOURS AND EARNINGS --- Prior Period --").

94.    Defendants' failure to pay Mr. Conte, Mr. Lardo, and Mr. Iarocci's overtime wages on time is representative of Defendants' practices with respect to the remaining Plaintiffs and all other Maintainers and Custodians.

95.    Throughout the relevant period up until approximately July 1, 2020, Defendants willfully and deliberate engaged in a policy and practice of violating the FLSA by failing to timely pay Maintainers and Custodians their overtime wages.

### FLSA COLLECTIVE ACTION ALLEGATIONS

96.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Maintainers or Custodians during the full statute of limitations period (the "FLSA Collective").

97.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same

common policies, and were subject to Defendants' practices of unlawfully failing to pay FLSA overtime and failing to pay overtime wages on time.

98.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the overtime provisions of the FLSA.

99.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

100.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid overtime wages, as well as an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

101.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, upon information and belief, there are approximately 500 other similarly situated persons who were employed by Defendants as Maintainers and Custodians during the full statute of limitations period.

102.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

103.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants as Maintainers or Custodians during the full statute of limitations period, along with their last known addresses, telephone numbers, and e-mail addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**

104.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

105.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

106.    Defendants are employers under FLSA § 203(d).

107.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

108.    Defendants have maintained a uniform policy and practice of failing to pay Plaintiffs and the FLSA Collective their full overtime wages in at least four different ways.

109.    First, Defendants require Plaintiffs and the FLSA Collective to perform compensable pre-shift work off-the-clock.  This off-the-clock work results in Plaintiffs and the FLSA Collective working considerably longer than 40 hours in a workweek.  However, Defendants do not compensate Plaintiffs and the FLSA Collective for this off-the-clock work.

110.    Second, Defendants' timekeeping and payroll system automatically rounds Plaintiffs' and the FLSA Collective's clock-in times forward to their scheduled tour start-times, even if they clocked in and began working before their scheduled tour start-times.  Additionally, if Plaintiffs or the FLSA Collective are even one minute late, Defendants' timekeeping and payroll system automatically rounds their clock-in times forward to the next scheduled tour start time 30 minutes later.

111.    Third, Defendants fail to include Shift Differentials, Attendance Bonuses, and Lump Sum Payments from Plaintiffs' and the FLSA Collective's regular rates of pay when calculating their overtime rates, thereby depressing the same and causing Plaintiffs and the FLSA

Collective to be denied overtime compensation.

112.    Fourth, when paying overtime, Defendants unlawfully aggregate the hours worked by Maintainers working 12-hour tours—including Mr. Murphy and various members of the FLSA Collective—over a two-week pay period, rather than calculating their hours on a per-week basis. As a result, Defendants pay FLSA overtime only when these Maintainers work more than 80 hours in a two-week period, rather than when he or she work more than 40 hours in a one-week period.

113.    Defendants' overtime policies and practices apply to all Plaintiffs and the FLSA Collective.

114.    Defendants' unlawful overtime policies and practices result in Plaintiffs and the FLSA Collective not being paid FLSA mandated overtime compensation.

115.    Accordingly, Defendants failed to pay Plaintiffs and the FLSA Collective at a rate of one-and-one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

116.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective overtime wages for all hours worked in excess of 40 hours in a workweek.

117.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

118.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE FLSA: FAILURE TO TIMELY PAY WAGES

119.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

120.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

121.    Defendants are employers under FLSA § 203(d).

122.    Pursuant to 29 C.F.R. § 778.106, "overtime compensation earned in a particular workweek must be paid on the regular payday for the period in which such workweek ends."

123.    Defendants engaged in a pattern and practice of failing to pay Plaintiffs and the FLSA collective all overtime wages owed on the regular payday for the period in which the work was performed.

124.    Instead, Defendants had a uniform policy and practice of paying overtime wages two pay periods – four to six weeks – after the work was performed.

125.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective on the regularly scheduled payday for the period in which the work was performed.

126.    Defendants acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

127.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, with interest, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal law;

B.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C.

§ 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

C.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

D.      Award Plaintiffs and the FLSA Collective an additional equal amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

E.      Award Plaintiffs and the FLSA Collective their reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees; and

F.      Grant Plaintiffs and the FLSA Collective such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all other similarly situated Maintainers and Custodians, hereby demand a trial by jury on all issues of fact and damages.

Dated: March 23, 2021            **FARUQI & FARUQI, LLP**
      New York, New York

                                        By:  */s/ Innessa M. Huot*
                                            Innessa Melamed Huot
                                          Alex J. Hartzband

                                        685 Third Avenue, 26th Floor
                                        New York, New York 10017
                                        Telephone: 212-983-9330

Facsimile: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com

**TILTON BELDNER, LLP**
Joshua Beldner
Eric S. Tilton
626 RXR Plaza
Uniondale, NY 11556
Telephone: (516) 262-3602
Facsimile: (516) 324-2170
jbeldner@tiltonbeldner.com
etilton@tiltonbeldner.com

*Attorneys for Plaintiffs and the Proposed FLSA Collective*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SABATO CONTE, MICHAEL MURPHY, YAMIRA WONG, ANTHONY LARDO, and MATTHEW IAROCCI, on behalf of themselves and others similarly situated,

                         Plaintiffs,

              v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

                         Defendants.

Civil Action No.:

**CONSENT TO SUE**

I, _Sabato Conte_____, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Conte, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, as my attorneys.

Name (Print):  _Sabato Conte_____

Signature: _[DocuSigned by signature] 90334BC82F7F4A7..._____

Date: _3/23/2021 | 12:02 PM EDT_____

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SABATO CONTE, MICHAEL MURPHY,
YAMIRA WONG, ANTHONY LARDO, and
MATTHEW IAROCCI, on behalf of themselves
and others similarly situated,

                Plaintiffs,

       v.

METROPOLITAN TRANSPORTATION
AUTHORITY and TRIBOROUGH BRIDGE
AND TUNNEL AUTHORITY,

                Defendants.

Civil Action No.:

**CONSENT TO SUE**

I, _____Michael Murphy_____, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Conte, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

    I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, as my attorneys.

Name (Print): _____Michael Murphy_____

Signature: _____    Date: ___3/20/2021 | 5:15 AM EDT____

DocuSigned by:
81417D454519470...

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SABATO CONTE, MICHAEL MURPHY, YAMIRA WONG, ANTHONY LARDO, and MATTHEW IAROCCI, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Defendants.

Civil Action No.:

**CONSENT TO SUE**

I, Yamira Wong, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Conte, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, as my attorneys.

Name (Print): Yamira Wong

Signature: _Yamira Wong_
EE3B6967F93D44A...

Date: 3/19/2021 | 5:13 PM EDT

DocuSign Envelope ID: CD6F876D-9BBF-4B96-8GGC-B3D583720869

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABATO CONTE, MICHAEL MURPHY, YAMIRA WONG, ANTHONY LARDO, and MATTHEW IAROCCI, on behalf of themselves and others similarly situated, | Civil Action No.: |
| | **CONSENT TO SUE** |
| Plaintiffs, | |
| v. | |
| METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, | |
| Defendants. | |

I, __Anthony Lardo_____, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Conte, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, as my attorneys.

Name (Print): ___Anthony Lardo_____

Signature: _____     Date: ___3/23/2021 | 11:04 AM EDT___

DocuSigned by:

E917A768DF1B4CE...

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABATO CONTE, MICHAEL MURPHY, YAMIRA WONG, ANTHONY LARDO, and MATTHEW IAROCCI, on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>    v.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>     Defendants. | Civil Action No.:<br><br>**CONSENT TO SUE** |

I, ___Matthew Iarocci___, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Conte, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, as my attorneys.

Name (Print): ___Matthew Iarocci___

Signature: _____  Date: ___3/20/2021 | 4:15 PM EDT___