

NEW YORK          CALIFORNIA          GEORGIA          PENNSYLVANIA

**Innessa M. Huot**
ihuot@faruqilaw.com

September 8, 2023

**VIA ECF**

Hon. Judge Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:  <u>*Conte, et al. v. Metro. Transp. Auth., et al.*</u>, No. 1:21-cv-02516 (VEC)

Dear Judge Caproni:

   We represent Plaintiffs in the above-referenced matter and write pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), to respectfully request approval of the parties' settlement of this matter (the "Settlement"), as set forth in the parties' Settlement Agreement and Release, as well as Plaintiffs' counsel's reasonable attorneys' fees and costs. *See* Declaration of Innessa M. Huot ("Huot Decl."),[1] Exhibit A (the "Agreement").[2] If approved, the Settlement will fully and finally resolve Plaintiffs' claims in this matter.

   As detailed below, the Settlement is reasonable under each of the five *Wolinsky* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

### I.  <u>PROCEDURAL HISTORY</u>

   Named Plaintiffs Sabato Conte, Michael Murphy, Yamira Wong, Anthony Lardo, and Matthew Iarocci ("Named Plaintiffs") and the additional 224 opt-in Plaintiffs who joined this lawsuit (together, "Plaintiffs") worked as Bridge & Tunnel Maintainers ("Maintainers") and Custodians ("Custodians") for Defendant Triborough Bridge and Tunnel Authority ("TBTA"), and, Plaintiffs allege, for Defendant Metropolitan Transportation Authority ("MTA") (together, "Defendants").[3] On March 23, 2021, Named Plaintiffs filed a Collective Action Complaint on behalf of themselves and others similarly situated, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by, *inter alia*, failing to properly and timely pay overtime wages. *See* ECF No. 1 ("Complaint").

---

[1] Hereinafter, all references to Declarations of Innessa M. Huot and Joshua Beldner in Support of Settlement Approval and Award of Attorneys' Fees and Expenses shall be referred to as "Huot Decl." and "Beldner Decl.", respectively.
[2] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __." Further, hereinafter, all capitalized terms shall be defined as in § I of the Settlement Agreement.
[3] Defendants dispute that MTA was Plaintiffs' employer under the FLSA.



Specifically, Named Plaintiffs claim that Defendants failed to pay Plaintiffs for pre-shift off-the-clock work (*id.* ¶¶ 38-45), utilized a timekeeping system that uniformly rounds hours worked down, always in favor of Defendants (*id.* ¶¶ 46-61), failed to properly calculate overtime (*id.* ¶¶ 62-81), failed to timely pay overtime wages (*id.* ¶¶ 86-95), and, as to certain Plaintiffs, failed to calculate overtime based on hours worked during each discrete workweek, instead aggregating hours worked over each two-week pay period (*id.* ¶¶ 82-85). Thereafter, 99 opt-in Plaintiffs joined the case. *See* ECF Nos. 9-10, 12-13, 15-18, 28-32, 36-37, 41-42, 45, 47, 49, 51, 69. On May 28, 2021, MTA and TBTA each filed an Answer denying all liability for Plaintiffs' claims. *See* ECF Nos. 25-26. On January 4, 2022, the Court conditionally certified the FLSA Collective, and over the next three months, an additional 125 opt-in Plaintiffs joined this lawsuit (229 Plaintiffs in total). *See* ECF Nos. 79-86.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in an extensive investigation and voluminous discovery, including the exchange of interrogatory responses, responses to requests for document production, and the production of records, including personnel files, correspondence, certifications, training materials, payroll documents, paystubs, wage distribution records, time records, and schedules. *See* Huot Decl. ¶¶ 9-11. Additionally, counsel for the parties conducted 19 depositions, including depositions of the five (5) Named Plaintiffs, seven (7) Opt-in Plaintiffs, and seven (7) representatives of Defendants and their fact witnesses. *Id.* at ¶ 15. The parties conferred numerous times as to the strengths, weaknesses, and merits of each party's claims and defenses and exchanged case law supporting their respective positions. *Id.* ¶ 18. Plaintiffs' counsel interviewed ***every single Plaintiff*** and analyzed ***over 105,000 records*** and electronically stored information ("ESI") pertaining to each of the Plaintiffs. *Id.* ¶¶ 13-14.

Plaintiffs retained the services of experts with extensive experience evaluating these precise issues in the seminal case *Scott v. City of New York*, 592 F. Supp. 2d 475 (S.D.N.Y. 2008), where plaintiffs successfully litigated nearly identical issues. *Id.* ¶ 21. These experts assisted counsel in the assessment of various methodologies (including those proposed by Defendants) for calculating damages under different scenarios in this case. *Id.* ¶ 22. Based on counsel's detailed interviews, investigations, discovery, analysis of records, and assistance of experts, counsel calculated Plaintiffs' damages to be $4,257,501.85. *Id.* ¶ 23.

Thereafter, the parties engaged in extensive settlement discussions, exchanging numerous settlement proposals, damage calculations, case law analysis, and additional records. *Id.* ¶ 24. The parties attended a full-day mediation session with highly regarded JAMS mediator, Carol Wittenberg, but were unable to resolve the case at that time. *Id.* ¶ 17. Over the next several months, the parties continued to actively negotiate through Ms. Wittenberg, exchanging additional settlement demands and offers, and engaging in numerous additional settlement discussion sessions with Ms. Wittenberg. *Id.* ¶ 25.



After months of negotiations, on April 21, 2023, the parties were able to resolve Plaintiffs' claims for a total sum of $2,900,000.00 on the terms set forth in the Agreement now before the Court. *Id.* ¶ 26; *see also id.* at Ex. A.

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND CONSISTENT WITH *CHEEKS*

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for a remarkable ***100% recovery*** on all vigorously disputed and fact-intensive claims for unpaid wages plus an ***additional 20% recovery*** of liquidated damages for the late payment claims—even assuming all factual and legal assumptions are made in Plaintiffs' favor.[4] Huot Decl. ¶ 28. Indeed, this assumes that Plaintiffs prevail on all their claims and Defendants lose on all their defenses. *Id.*

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances including, but not limited to, examining the five so-called *Wolinsky* factors: (1) Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks*—specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *See Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740 (AT)(GWG), 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015). This Settlement satisfies the five *Wolinsky* factors and does not conflict with the *Cheeks* admonitions.

### A.    Plaintiffs Will Receive a Significant Portion of Their Maximum Possible Recovery Under the Settlement

The first *Wolinsky* factor supports a finding that the Settlement is exceedingly fair and reasonable as it provides Plaintiffs with a substantial portion of the maximum possible recovery that they would obtain if they litigated this matter through summary judgment and/or trial. Indeed, where all facts are viewed in light most favorable to Plaintiffs, the Settlement results in Plaintiffs recovering 100% of all unpaid wages plus an additional 20% of the liquidated damages for the late payment claims. Huot Decl. ¶¶ 28.[5]

---

[4] Defendants advised that they assessed the Settlement as a 68% cumulative recovery of unpaid wages and liquidated damages calculated together, based on Plaintiffs' assumptions and calculations, which is eminently fair and reasonable in light of the vigorously disputed facts and legal claims in this case. Huot Decl. ¶ 29.

[5] As noted, *supra*, Defendants advised that they assessed the Settlement as 68% of the total recovery based on Plaintiffs' assumptions and calculations, rather than separately valuing the percentage of recovery of economic versus liquidated damages. *Id.*



The Honorable Valerie E. Caproni
September 8, 2023
Page 4

This same recovery percentage has been recently approved in a similar lawsuit filed by plaintiffs against the same defendants, asserting almost identical claims. *Mercado, et al. v. Metropolitan Transp. Auth. et al. ("Mercado")*, No. 20 Civ. 06533 (AT), slip op., ECF No. 139 (S.D.N.Y. July 5, 2023) (approving recovery of 100% of unpaid wages plus an additional 20% of the liquidated damages for late payment claims). Indeed, this recovery reflects a reasonable compromise and exceeds recovery percentages recently approved in other wage-and-hour settlements within this District. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Siddiky v Union Sq. Hosp. Grp., LLC*, No. 15 Civ. 9705 (JCF), 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (approving 23% recovery of plaintiffs' maximum possible recovery); *Griffin v. Aldi, Inc. ("Griffin")*, No. 16 Civ. 00354 (LEK)(ATB), slip op., ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *7 (S.D.N.Y. Sept. 19, 2014) (approving FLSA class settlement of 20-25% of maximum recovery).

To ascertain Plaintiffs' best-case scenario for recovery, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue. Huot Decl. ¶¶ 30-31. Plaintiffs' counsel conducted extensive interviews with every single one of the 229 Plaintiffs and analyzed over 105,000 records and ESI provided by both Plaintiffs and Defendants in this case. *Id.* Based on this analysis and investigation, as well as formal discovery, and assistance of experts, Plaintiffs' counsel assessed the strengths and weaknesses of each of Plaintiffs' claims and calculated the range of possible recoveries. *Id.* ¶ 32.

Here, Plaintiffs allege that they perform compensable pre-shift work (*i.e.*, briefing and conferring with one another about assignments, incidents, events, and other pertinent information relevant to the upcoming tour, rebooting and starting up the computers, reviewing emails, alerts, and other pertinent correspondence and communications, compiling various forms for use during each tour, etc.), but Defendants' timekeeping system automatically rounds their clock-in times to their scheduled start times; thereby cutting all hours worked outside their scheduled tours. *Id.* ¶ 33; Complaint ¶¶ 46-61. Defendants claim that they pay various additional compensation that supposedly offsets any amounts owed for pre-shift work, and dispute that such pre-shift work is even compensable. Defendants further contend that such additional compensation should be used to offset Plaintiffs' claimed overtime. Huot Decl. ¶ 34.

Plaintiffs claim that their pre-shift work is indeed compensable and dispute Defendants' characterization of "additional compensation" or its use as an offset against claimed overtime. *Id.* ¶ 35. Plaintiffs contend that such additional compensation is merely a fixed lump sum payment promised under their Collective Bargaining Agreement ("CBA"), similar to a Longevity payment, that is paid without regard to the number of hours worked. *Id.* Plaintiffs further claim that such additional compensation should not be used as an offset but should instead be included in the regular rate of pay for purposes of calculating overtime. *Id.*

Plaintiffs also allege that Defendants failed to properly calculate their overtime rates because they failed to include various compensation in their regular rates of pay for purposes of calculating overtime. *Id.* ¶ 36; Complaint ¶¶ 62-81. Specifically, Plaintiffs claim that Defendants paid them depressed overtime rates because they did not include: (1) Shift Differentials; (2) Hazardous Work Pay; (3) Attendance Bonuses; and (4) Lump Sum Payments promised under their CBA and paid without regard to hours worked.[6] Huot Decl. ¶ 37; Complaint ¶¶ 62-81.

Additionally, Plaintiffs also allege that, up until July 1, 2020, Defendants' payment of overtime two pay periods (i.e., four to six weeks) after the work was performed was unnecessarily and unreasonably late in violation of the prompt pay requirements of the FLSA. Complaint ¶¶ 86-95; Huot Decl. ¶ 39. Defendants contend that the timing of the overtime payments do not violate the FLSA because they were made as soon as administratively feasible and reasonably practical under the circumstances. *Id.* at ¶ 40.

Overall, Defendants contest the validity of Plaintiffs' contentions, including the number of hours Plaintiffs spent performing compensable pre-shift work, their claimed damages, and the assumptions underlying such claims and calculations. *Id.* ¶ 41. Specifically, Defendants claim that Plaintiffs improperly include certain payments in the proposed overtime rates, and that the contractual overtime rates paid to Plaintiffs are greater than what is required under the FLSA; thereby rendering damages non-existent. *Id.* Defendants also claim that certain Plaintiffs are not entitled to overtime because they purportedly have supervisory and/or administrative responsibilities and are allegedly exempt under the FLSA. *Id.* Finally, Defendants raise numerous "good faith" defenses, claiming that any damages should extend back only two, rather than three years under the FLSA. *Id.*

The parties vehemently dispute these issues, and have exchanged statutes, regulations, case law, and research memoranda regarding the legal and factual issues supporting their respective positions. *Id.* ¶¶ 42-43. The parties engaged in numerous conferences to discuss the facts and law underlying their positions. *Id.* The parties agree that these issues involve fact-intensive inquiries regarding Plaintiffs' pre-shift activities, to determine whether they are deemed compensable. *Id.* ¶ 44. The parties also agree that these issues involve fact-intensive assessments of certain Plaintiffs' duties to determine whether their primary duties were performing labor or more supervisory or administrative in nature. *Id.* The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages. *Id.* Given the fact-intensive nature of the issues in dispute, had this matter not resolved, Plaintiffs were ready to proceed with these issues to trial. *Id.* ¶ 45.

---

[6] The Lump Sum Payments at issue in this case included: Longevity Pay and Maintenance Pay. Huot Decl. ¶ 38.



Nevertheless, for settlement purposes only, and specifically for purposes of Plaintiffs' calculations of potential recovery in terms of evaluating the proposed settlement, the parties assumed the main disputed issues to the benefit of the Plaintiffs. *Id.* ¶ 46. Indeed, the parties assumed that: (1) all recorded work time was compensable; (2) additional compensation was not an offset against claimed overtime; (3) all Shift Differentials, Hazardous Work Pay, Attendance Bonuses, and Lump Sum Payments would be included in the overtime rate; (4) Plaintiffs are not exempt under the FLSA; (5) all overtime payments prior to July 1, 2020, were deemed late under the FLSA; and (6) the statute of limitations for all claimed damages would extend back three years. *Id.* Indeed, for settlement purposes only, the parties assumed that Plaintiffs would prevail on all their claims and that Defendants would lose on all of their defenses—a very favorable assumption.

Making all such favorable assumptions to Plaintiffs' benefit, counsel calculated the maximum possible damages for each of the 229 Plaintiffs, with the assistance of experts, by analyzing each of their paystubs, time records, approval reports, payroll documents, and schedules for every work week during the relevant time period. *Id.* ¶ 47. Plaintiffs' counsel recalculated Plaintiffs' regular rate of pay, to include the additional compensation previously described, and then calculated what Plaintiffs claim to be the FLSA-compliant overtime rate. *Id.* ¶¶ 48-49. Plaintiffs' counsel then calculated unpaid overtime by determining both the number of off-the-clock hours cut by Defendants' timekeeping system and the amount of overtime wages Defendants underpaid due to their depressed overtime rates. *Id.* ¶ 50.

The total backpay damages stemming from these claims of unpaid overtime wages amount to $2,565,798.36. *Id.* ¶ 51. Plaintiffs submit that this Settlement provides for a ***100% recovery*** of these damages. *Id.* Additionally, the total damages stemming from the late payment of overtime wages claim amounts to $1,691,703.49 – which consists of liquidated damages equal to 100% of all overtime payments made by Defendants, as all of them are alleged to be paid late. *Id.* ¶ 52. Plaintiffs further submit that this Settlement provides for an ***additional 20% recovery*** of these liquidated damages. *Id.* As such, making all favorable assumptions, Plaintiffs assert that their damages for all claims amount to $4,257,501.85 ($2,565,798.36 for unpaid wages and $1,691,703.49 for liquidated damages on late payment of wages). *Id.* ¶ 53.[7]

Overall, Defendants contend that Plaintiffs' potential recovery is either non-existent or significantly lower than estimated. *Id.* at ¶ 54. Moreover, if Defendants successfully prevail on even one of their defenses—offsets, compensable work, statute of limitations, or any of the other fact-intensive issues and defenses discussed above—then Plaintiffs would stand to recover only a fraction of the potential damages provided under this Settlement. *Id.* Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on all, or at least some,

---

[7] As noted, *supra,* Defendants advised that they assessed the Settlement as an overall payment of $2,900,000 for damages calculated by Plaintiffs (based on Plaintiffs' assumptions) to be a total of $4,257,501.85, which amounts to an overall recovery of 68% of such cumulative damages, rather than separately valuing economic versus liquidated damages. Huot Decl. ¶ 29.



of their defenses, Plaintiffs' counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiffs would obtain if they litigated this matter through summary judgment and/or trial and is an overwhelmingly positive result for Plaintiffs. *Id.* ¶ 55.

**B.    By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of motion practice, expert discovery, and the risk of a lengthy, fact-intensive trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in off-the-clock work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risks of proving damages for off-the-clock claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]"). Here, the burden will be especially great because the parties maintain drastically different assessments of whether and for how many hours Plaintiffs worked before their scheduled tours.

Indeed, further litigation would result in additional expense, including formal expert discovery, motion practice, and trial preparation, that could meaningfully decrease possible recovery for Plaintiffs. For example, Defendants would likely move to decertify the FLSA Collective, and both parties would move for summary judgment. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive").

Given the fact-intensive analysis of the issues in dispute, Plaintiffs submit that this case will likely proceed to trial, at a minimum, on the issues of how many hours Plaintiffs worked before their scheduled tours, whether their work was considered compensable, and whether their primary duties were performing labor or more supervisory or administrative in nature. Huot Decl. ¶¶ 44-45. Because both parties would face significant expense and risk by continuing to litigate, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated by *Wolinsky*.

**C.** **The Settlement is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion**

The fourth and fifth factors—whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion—also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in wage-and-hour and employment disputes, and Plaintiffs' counsel has extensive experience representing employees in complex class and collective action litigation. Huot Decl. ¶¶ 4-6; 56; Ex. B (Faruqi & Faruqi, LLP firm résumé); Beldner Decl. ¶¶ 2-10. The parties have worked diligently to advance their clients' positions and negotiate a fair resolution. Huot Decl. ¶ 58.

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims unrelated to their claims for unpaid wages. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 Civ. 1012 (DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement). Critically, this Settlement does not contain any terms that would militate against the Court approving it. For example, the Settlement does not contain any confidentiality provision and allows Plaintiffs to openly and freely discuss their employment experiences, their lawsuit, their claims, and this Settlement with anyone. *See generally* Ex. A.

Likewise, the Settlement contains a release limited to FLSA wage and hour claims, during the time Plaintiffs worked as Bridge & Tunnel Maintainers and Custodians, during the Relevant Time Period. Ex. A § 13. *See Flood*, 2015 WL 4111668, at *2 (indicating release acceptable if limited to claims relating to existing lawsuit). This release is specifically tailored and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, No. 14 Civ. 3173 (DRH)(SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017). Indeed,

the scope of the release with respect to the nature of the claims and the "Released Parties" (as defined in the Agreement) is appropriately tailored given the corporate relationship among Defendants and the identified subsidiaries and affiliates.

Moreover, an identical release was recently approved by two Courts in this District in connection with two similar FLSA lawsuits brought by Bridge and Tunnel Officers, Sergeants, and Lieutenants against Defendants. *See Mercado,* slip op., ECF No. 139; *Feliciano v. Metro. Transp. Auth.*, No. 18 Civ. 0026 (VSB), slip op., ECF No. 99 (S.D.N.Y. May 6, 2020). It should also be emphasized that there are no absent class members that are potentially "unknowingly" releasing any claims. On the contrary, every single Plaintiff will have an individual choice about whether to accept the Settlement, redeem their Settlement Checks, and release their claims, or not be bound by the Settlement and retain their right to pursue their claims separately. *See* Ex. A at § 13.

In sum, this Settlement provides for a significant portion of Plaintiffs' possible recovery, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.

## III. PLAINTIFFS' PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $966,666.66, which is one-third (33.33%) of the Gross Settlement Fund. Huot Decl. ¶ 59; *see Navarrete v. Milano Mkt. Place, Inc.*, No. 18 Civ. 7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts to only 77% of Plaintiffs' counsel's lodestar of $1,250,272.50 in this case and is exceedingly fair and reasonable under all applicable laws. Huot Decl. ¶ 60.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g., Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases); *Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Ezpino*, 2017 WL 3037483, at *3 ("[a] one-third contingency fee is a commonly accepted fee in this Circuit.") (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *Behzadi v. Int'l*



*Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel).

The requested fees are further justified by the circumstances of this action. Plaintiffs' counsel was retained on a purely contingency fee basis and, as a result, has advanced all costs and shouldered all the risks in this litigation. Huot Decl. ¶ 61. Such risks have included a possibility that Plaintiffs would recover no damages at all, given the highly fact-intensive nature of their wage claims. *Id.* ¶ 62. Awarding the requested fees furthers the FLSA's remedial purposes by recognizing the risks attendant to wage claims like those asserted by the Plaintiffs. *See Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes.").

The requested fee award of $966,666.66 represents a ***negative*** multiplier of 0.77 times of Plaintiffs' counsel's lodestar of $1,250,272.50. Indeed, the requested fee award is only 77% of Plaintiffs' counsel's actual lodestar. *Id.* ¶ 60. Put differently, Plaintiffs request approval of attorneys' fees amounting to ***less than*** the market value of the hourly work that has been invested in this action to bring it to resolution. *Id.* As such, the requested attorneys' fees are imminently reasonable.

Additionally, the requested fee award will also compensate Plaintiffs' counsel for the considerable time needed to administer the Settlement going forward. *See Flores*, 2014 WL 321831, at *9 ("In wage and hour cases, Class Counsel are often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Johnson*, 2011 WL 4357376, at *16 (noting that future work covered in settlement award supports fee application). Thus, Plaintiffs' request for approval of attorneys' fees is reasonable.

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores*, 2014 WL 321831, at *9; *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16 Civ. 4751 (RRM)(RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of September 8, 2023, Plaintiffs' counsel has billed 2,698.70 hours on this matter—an adversarial litigation that includes 229 Plaintiffs, where Plaintiffs' counsel: (i) investigated Plaintiffs' claims; (ii) drafted detailed pleadings; (iii) engaged in substantial discovery; (iv) exchanged discovery requests, responses, and letters detailing alleged deficiencies in each party's



respective discovery productions and responses; (v) met and conferred numerous times to resolve disputes; (vi) analyzed over 105,000 documents, employment records, and ESI for all Plaintiffs; (vii) fully briefed their Motion for Collective Certification, including obtaining numerous declarations from the Plaintiffs in support of same; (viii) prepared and handled 19 depositions of the Named Plaintiffs, multiple Opt-In Plaintiffs, and Defendants' 30(b)(6) representatives and fact witnesses; (ix) interviewed every single one of the 229 Plaintiffs and numerous witnesses; (x) conferred with experts about damage methodologies and calculations; (xi) meticulously calculated the damages for each cause of action for each of the 229 Plaintiffs; (xii) participated in Court conferences; (xiii) administered notices of pendency for the FLSA Collective; (xiv) exchanged extensive correspondence between and among the parties; (xv) constantly kept in touch with the Plaintiffs to update them on case developments and respond to inquiries; (xvi) drafted detailed mediation statements and damage models for settlement purposes; (xvii) participated in a full-day mediation session with JAMS mediator Ms. Wittenberg; (xviii) exchanged and reviewed supplemental models and calculations between the parties; (xix) participated in valuable settlement discussions with defense counsel; and (xx) successfully negotiated the terms of the Settlement Agreement now presented to the Court for approval—amounting to $1,250,272.50 in fees if calculated pursuant to the lodestar.  *See* Huot Decl. ¶ 63; Ex. C (Total Lodestar); Ex. D (Faruqi Firms' contemporaneously-kept billing records); Beldner Decl. ¶¶ 11-13; Beldner Decl. at Ex. A (Tilton Beldner's contemporaneously-kept billing records).

The lodestar is calculated based on comparable hourly rates for Plaintiffs' counsel that have been approved by other courts in the Second Circuit and across the country.  Huot Decl. ¶¶ 64-78 *see, e.g., Mercado,* slip op. at 4, ECF No. 139 (S.D.N.Y. July 5, 2023) ($550 for Ms. Huot, Mr. Beldner, and Mr. Tilton, $500 for Mr. Hartzband, $400 for Mr. Burr and Mr. Crabill, $375 for Mr. Collopy, $350 for Ms. Stanley and Ms. Petrovic, and $175 for paralegals); *Hall v. J. Caiazzo Plumbing & Heating Corp. et al*, No. 21 Civ. 05416 (ENV)(SJB) (E.D.N.Y. Sep 29, 2021) ($550 for Ms. Huot, $500 for Mr. Hartzband, $375 for Mr. Burr and Mr. Crabill, $350 for Ms. Stanley, and $175 for paralegals); *Porrini v. McRizz, LLC, et al.*, No. 19-cv-03979(ARR)(RML), ECF Nos. 53-1 ¶ 61; 55 (E.D.N.Y. Jul. 10, 2019) ($550 for Ms. Huot, $450 for Mr. Hartzband, $375 for Mr. Burr and Mr. Crabill, $350 for Ms. Stanley, and $175 for paralegals); *Alam v. O&S Gen. Contractors Corp.*, No. 18-CV-2069 (LDH) (JO), ECF Nos. 19-4 at 7; 20 (E.D.N.Y. Aug. 17, 2018) (approving rates of $600 for Ms. Huot, $450 for Mr. Hartzband, and $310 for paralegal); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT), ECF Nos. 107-8; 109 (S.D.N.Y. Oct. 2, 2014) ($875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, and $315-$245 for paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519- BCW, ECF Nos. 140-1; 155 (W.D. Mo. July 7, 2017) ($550 for Ms. Huot and $375-$310 for paralegals*); Run Them Sweet, LLC v. CPA Global, LTD, et al.*, No. 1:16-cv-1347, ECF Nos. 108- 4 ¶ 4; 114 (E.D. Va. Oct. 6, 2017) ($550 for Ms. Huot); *see also, Goins v. BB&T Securities, LLC, et al.*, No. 1:20-cv-09891(PGG)(JLC), ECF No. 38; *Zigos v. Mayshad Choice Inc., et al.*, No. 20-cv-09203-ALC, ECF Nos. 26 ¶ 55; 28 (S.D.N.Y. May 21, 2021); *Betesh v. Onia, LLC, et al.*, No. 20 Civ. 9770 (AT), ECF Nos. 31-1 ¶42; 35 (S.D.N.Y. Oct. 12, 2021); *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091-JMA-AKT, ECF No. 28 ¶ 42 (E.D.N.Y. Mar. 30, 2021); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al.*, No. 1:20-cv-02481-


RWL, ECF Nos. 74-1 ¶ 53; 76 (S.D.N.Y. Feb. 25, 2021); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, No. CV-18-1397 (ST), ECF Nos 75 ¶ 67; 77 (E.D.N.Y. Feb. 4, 2021); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 20 Civ. 726 (LB), ECF Nos. 23 ¶ 51; 25 (E.D.N.Y. Dec. 23, 2020); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18 Civ. 26 (VSB), ECF Nos. 97-1 ¶ 60; 99 (S.D.N.Y. May 6, 2020); *Pazdniakou v. CoolTech Mech. Corp.*, et al., No. 1:19-cv-5434 (SJB), ECF Nos. 18 ¶ 49; 21 (E.D.N.Y. Mar. 23, 2020); *Griffin*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4 ¶ 3; 109 ¶¶ 12-13, 18 (N.D.N.Y. Nov. 15, 2018); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 18-cv-00918, ECF No. 129-1 ¶ 31 (E.D.N.Y. May 8, 2019); *Georgiev, et al. v. Shapiro, et al.*, No. 19 Civ. 122 (JPO), ECF Nos. 41 ¶ 24; 47 (S.D.N.Y. Oct. 2, 2019); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, NYSCEF Nos. 71 ¶ 26; 80 ¶ 7-8 (N.Y. Sup. Queens Cty. June 24, 2020); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, NYSCEF Nos. 57; 108 (N.Y. Sup. N.Y. Cty. June 11, 2020).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Authority of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB)(VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiffs' counsels' practice is non-contingency cases where clients pay on an hourly basis at the following hourly rates: $575 for Ms. Huot, $500 for Mr. Hartzband, $475 for Mr. Dusenbery and Mr. Clark, $450 for Mr. Burr and Mr. Crabill, $400 for Mr. Collopy and Ms. Petrovic; $375 for Ms. Stanley, and $175 to $195 for paralegals. Huot Decl. ¶¶ 68-79. Working on the instant matter on a contingency basis required Plaintiffs' counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. Huot Decl. ¶ 79. Nevertheless, Plaintiffs' counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.* ¶ 80.

Further, Plaintiffs request the Court approve reimbursement of costs and expenses incurred by Plaintiffs' counsel in furtherance of this matter. Plaintiffs' counsel has incurred $91,715.89 in actual costs and expenses[8] for, *inter alia*, court filings, service fees, mediation costs, claims administration costs, discovery related expenses, expert fees, settlement administration costs, and postage. Huot Decl. ¶¶ 81-82. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)).

---

[8] In the Agreement, Plaintiffs' counsel was not yet aware of the actual costs and expenses incurred in furtherance of the litigation and identified $100,000.00 as the ceiling for what potential costs and expenses could be. *See* Ex. A at § 4(b). Subsequently, Plaintiffs' counsel calculated its actual costs and expenses to be $91,715.89. Huot Decl. ¶¶ 81-82.

Accordingly, Plaintiffs' request for approval of $966,666.66 in attorneys' fees and $91,715.89 in unreimbursed expenses, for a total of $1,058,382.55 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

## IV.    THE PROPOSED SERVICE AWARDS TO NAMED PLAINTFFS ARE FAIR AND REASONABLE

Plaintiffs request that this Court grant service awards of $15,000.00 to Named Plaintiffs Sabato Conte, Michael Murphy, Yamira Wong, Anthony Lardo and Matthew Iarroci, and Five Thousand Dollars and Zero Cents ($5,000.00) to Certain Opt-in Plaintiffs Peter Toti, Paul Andrade, James Hally, Kirby Russell, Elena Melian, Michael McAuliffe and James Wamsley, for the time and effort they each expended in furtherance of this litigation and in securing the Settlement, including specifically by being subject to discovery and depositions. "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Flores*, 2014 WL 321831, at *10 (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 05669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)). In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the plaintiffs; (2) the time and effort expended by the plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Service awards are especially important in employment cases, where employees have assumed risks of future retaliation and losing future employment opportunities. Indeed, Named Plaintiffs "face[] the risk[s] that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (recognizing that plaintiffs in wage and hour cases "fac[e] potential risks of being blacklisted as 'problem' employees").

First, Named Plaintiffs were all employed by Defendants when they retained Plaintiffs' counsel to investigate their claims against Defendants. Huot Decl. ¶ 7. By initiating this action, they risked retaliation from Defendants.[9] Moreover, they continue to risk retaliation by their current employers and put their ability to secure future employment at risk as well. *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 01029(CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb.

---

[9] Named Plaintiffs do not allege that Defendants retaliated against them; but, the risk of retaliation is important to weigh in any plaintiff's decision to come forward and commence litigation in a representative capacity.



9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*; *Henry*, 2014 WL 2199427, at *10 ("In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate.").

Second, both Named Plaintiffs and the select Opt-In Plaintiffs contributed a significant amount of time and effort to the case. *See* Exs. E-P (Decls. of Sabato Conte, Michael Murphy, Yamira Wong, Anthony Lardo and Matthew Iarroci, Peter Toti, Paul Andrade, James Hally, Kirby Russell, Elena Melian, Michael McAuliffe and James Wamsley). By way of example, these Plaintiffs provided counsel with detailed factual information regarding their job duties, Defendants' policies, and other information and documents relevant to their own claims and the claims of the other Plaintiffs. *See id.* These Plaintiffs participated in formal discovery by producing records, responding to written discovery demands, meeting with counsel for two deposition preparation sessions, and appearing for full-day depositions where they provided extensive testimony related to their claims. *See id.* The Named Plaintiffs also participated in an all-day mediation session, were instrumental in obtaining discovery from Plaintiffs, and assisted Plaintiffs' counsel in analyzing the compensation records and preparing damage calculations. Exs. E-P; *see Parker*, 2010 WL 532960, at *1 (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, and identifying and locating other class members to expand settlement participants); *Frank v. Eastern Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents).

Third, the Settlement has vindicated the statutory rights of Plaintiffs under the FLSA, which further supports the request for the Service Awards. The requested service awards of $15,000.00 to the Named Plaintiffs and $5,000 to each of the select Opt-In Plaintiffs collectively amounts to a total of $110,000, which is approximately 3.7% of the total recovery, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Grp.*, *LLC*, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable).

Analyzing the reasonableness of the proposed service awards in terms of absolute dollars, courts routinely approve service awards equal to or greater than the awards requested here. *See Hernandez*, 2013 WL 1209563, at *10 (approving service payment of $15,000 to the named plaintiffs in FLSA collective action); *Sewell*, 2012 WL 1320124, at *15 (awarding $15,000 service award in FLSA case); *Reyes*, 2011 WL 4599822, at *9 (approving award of $15,000); *Khait v. Whirlpool Corp.*, 06 Civ. 6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010)



The Honorable Valerie E. Caproni
September 8, 2023
Page 15

(approving award of $15,000); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494(RLE), 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015) (awarding $15,000 to named plaintiff, "recogniz[ing] the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in mediation."); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *8 (E.D.N.Y. Feb. 18, 2011) (awarding service payments ranging from $30,000 to $7,500 in FLSA collective action). Accordingly, the service awards are reasonable and should be approved.

## V.    **CONCLUSION**

Accordingly, Plaintiffs request that the Court approve of the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

We thank Your Honor for the Court's time and consideration.

Respectfully submitted,

Innessa M. Huot

Cc:    Counsel of Record (*via* ECF)